Writ of Mandamus Conditionally Granted; Opinion Filed January 8, 2013



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-12-01577-CV

IN RE METROPCS COMMUNICATIONS, INC.; DEUTSCHE TELEKOM;
T-MOBILE USA, INC.; ROGER D. LINQUIST; W. MICHAEL BARNES;
JACK F. CALLAHAN, JR.; C. KEVIN LANDRY; ARTHUR C. PATTERSON;
AND JAMES N. PERRY, JR., Relators

Original Proceeding from the County Court at Law No. 1
Dallas County, Texas
Trial Court Cause No. CC-12-06144-A

# OPINION

Before Justices Bridges, Lang, and Fillmore
Opinion By Justice Lang

This mandamus proceeding arises from a "shareholder class and derivative action" brought

by real party in interest Adam Golovoy[1] against relators[2] for alleged breaches of fiduciary duty

respecting a proposed "business combination" involving MetroPCS, DT, and T-Mobile. Golovoy

filed a motion for a temporary restraining order to enjoin several alleged "deal protection devices"

pertaining to the proposed business combination, including, *inter alia*, (1) the issuance of any

"Rights Certificates" to MetroPCS common stockholders pursuant to a MetroPCS "Rights

---

[1] Golovoy asserted in his petition that he is a shareholder of MetroPCS Communications, Inc. ("MetroPCS") and that the underlying action was brought "derivatively on behalf of [MetroPCS]" and "individually on behalf of the holders of [MetroPCS] common stock."

[2] Relators named as defendants in the underlying lawsuit were Deutsche Telekom ("DT"); T-Mobile USA, Inc. ("T-Mobile"); Roger D. Linquist; W. Michael Barnes; Jack F. Callahan, Jr.; C. Kevin Landry; Arthur C. Patterson; and James N. Perry, Jr. The latter six were described in the petition as members of MetroPCS's board of directors. Relator MetroPCS was named in the petition as a "nominal party."

Agreement" dated March 29, 2007, and (2) compliance with a voting provision contained in section 4.5(h) of the agreement governing the proposed business combination (the "Business Combination Agreement"). Relators filed (1) a motion to dismiss in which they asserted that a "mandatory exclusive forum selection provision" in MetroPCS's bylaws requires that this case be brought only in Delaware and (2) a motion to stay in which they requested the trial court to rule on their motion to dismiss before considering Golovoy's motion for a temporary restraining order. After holding a hearing on Golovoy's motion, the trial court signed a temporary restraining order dated November 16, 2012 (the "TRO"). The TRO enjoined MetroPCS and its board of directors from "causing or allowing" the issuance of the "Rights Certificates" described above or complying with the voting provision in section 4.5(h) of the Business Combination Agreement. Additionally, in the TRO, the trial court set a November 29, 2012 hearing to determine whether the TRO "should be made a Temporary Injunction pending a full trial on the merits."

In their petition for writ of mandamus, relators request this Court to direct the trial court to (1) vacate the TRO, including the setting for the temporary injunction hearing, (2) deny Golovoy's motion for a temporary restraining order, and (3) grant relators' motion to stay the case until relators' motion to dismiss is decided.[3] Because we conclude the trial court abused its discretion and relators have no adequate remedy by appeal, we conditionally grant the writ of mandamus.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Golovoy contended in his petition that DT, T-Mobile, and the members of MetroPCS's board of directors (the "Board") breached fiduciary duties or aided and abetted such breaches in connection with DT and T-Mobile's "proposed acquisition of [MetroPCS] at an unfair price via a

---

[3] Additionally, relators requested expedited relief by separate motion filed along with their petition for writ of mandamus. Pursuant to that motion, in a November 20, 2012 order, this Court stayed the temporary restraining order at issue and the temporary injunction hearing described therein until further order of this Court.

recapitalization" pursuant to the Business Combination Agreement. According to Golovoy, the "per share value of the Proposed Acquisition drastically undervalues [MetroPCS's] worth and prospects." Further, Golovoy asserted "the terms of the Proposed Acquisition were designed to ensure the sale of [MetroPCS] to one buyer, and one buyer only" on terms preferential to DT, T-Mobile, and the Board, "and to subvert the interests of plaintiff and the other public stockholders of [MetroPCS]." Specifically, Golovoy contended

> The Board breached its fiduciary duties by agreeing to preclusive deal protection devices in connection with the [Business Combination Agreement] [MetroPCS] entered into with T-Mobile [and DT]. These provisions, which collectively preclude any competing offers for [MetroPCS], include: (i) a no-solicitation provision that precludes [MetroPCS] from providing confidential [MetroPCS] information to, or even communicating with, potential competing bidders except under extremely limited circumstances; (ii) a matching rights provision that allows T-Mobile [and DT] to match any competing superior proposal; and (iii) a termination fee provision which obligates [MetroPCS] to pay T-Mobile [and DT] a $150 million termination fee in the event the Proposed Acquisition is terminated in favor of a superior proposal.

Golovoy contended in part that unless enjoined by the trial court, "defendants will consummate the Proposed Acquisition, and plaintiff and the other [MetroPCS] shareholders will forever lose their equity interest in [MetroPCS] for an inadequate price, all to the irreparable harm of plaintiff and the other shareholders of [MetroPCS]." The relief requested in the petition included, *inter alia,* awarding damages to MetroPCS; declaring the Business Combination Agreement "unlawful and unenforceable"; rescinding, to the extent already implemented, the Business Combination Agreement, "including the onerous and preclusive deal protection devices"; and "[e]njoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until defendants disclose all material information to [MetroPCS's] shareholders in advance of the shareholder vote on the Proposed Acquisition necessary for [MetroPCS's] shareholders to be able to make a fully informed decision

–3–

on the Proposed Acquisition." On the day after the petition was filed, Golovoy's counsel of record, Jamie McKey, filed a "Verification" in which she testified, "I have read the Shareholder Derivative and Class Action Petition for Breach of Fiduciary Duty. The facts stated in it are within my personal knowledge and are true and correct."

On November 5, 2012, Golovoy filed a "Motion for a Temporary Restraining Order and an Order Compelling Expedited Discovery." In that motion, Golovoy asserted in part

> [T]he Board has agreed to a number of unfair contractual terms in the merger documents that are designed to take freedom of choice, and any hope for a better deal, away from shareholders. Each day that passes with those unfair contractual terms in place decreases the likelihood that a better offer will be made for the Company, and increases the likelihood that shareholders will be disenfranchised and otherwise irreparably harmed. Accordingly, time is of the essence, and the Proposed Acquisition and the unfair contractual terms agreed to by defendants should be restrained and enjoined so that a fair and open process can take place.

Golovoy restated the contentions in his petition respecting the undervaluation of MetroPCS and the three alleged "preclusive deal protection devices" described therein. Further, in the motion, Golovoy stated in part

> On October 3, 2012, [MetroPCS] entered into an amendment to the its [sic] Rights Agreement, dated as of March 29, 2007, by and between [MetroPCS] and American Stock Transfer & Trust Company, LLC, as Rights Agent (the "Poison Pill"). The amendment makes [MetroPCS's] Poison Pill inapplicable to the Proposed Acquisition, but keeps the Poison Pill in place as to all other potential acquirers of [MetroPCS] (the "Poison Pill Lock-Up"). That means that if a potential acquirer other than [DT and] T-Mobile attempts to launch a tender offer for more than 15% of [MetroPCS's] outstanding stock, or even announces an intention to do so, a "flip-in" event, will occur that allows existing [MetroPCS] shareholders to buy more [MetroPCS] shares at a discount, making [MetroPCS] prohibitively expensive for any buyer. . . . As such, the Poison Pill Lock-Up is an onerous and inappropriate deal protection device that has the immediate and absolute effect of discouraging potential acquirers from making a competitive and superior bid for [MetroPCS] in the form of a tender offer directly to [MetroPCS's] shareholders.
> . . . .
> In addition the Business Combination Agreement also contains a "force the vote" provision. MetroPCS cannot terminate the Proposed Transaction even if a competing bid is made unless [MetroPCS] holds its shareholder vote and shareholders vote no. Rather than insisting on a "fiduciary out" that would permit the

Board to terminate the Proposed Acquisition in the event a higher offer came along, the Board instead agreed to a "forced vote" on the Proposed Acquisition regardless of any better deals. See Briscoe Decl., Ex. A at §4.5(h). These lockups are simply unfair and should be restrained and enjoined.

Golovoy's counsel of record, Willie C. Briscoe, filed an affidavit dated November 5, 2012, in support of Golovoy's motion for a temporary restraining order and order compelling expedited discovery. In that affidavit, Briscoe testified as follows:

1. . . . I make this declaration in support of Plaintiffs' Motion for a Temporary Restraining Order and an Order Compelling Expedited Discovery. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. Attached is a true and correct copy of the following exhibit:

Exhibit A: [Business Combination Agreement] between Deutsche Telekom AG, T-Mobile USA, Inc. and MetroPCS Communications, Inc., dated October 3, 2012.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct.

Attached to Briscoe's affidavit was a copy of the Business Combination Agreement.

On November 12, 2012, relators filed a "Motion to Dismiss or Stay" (the "Motion to Dismiss"). In the Motion to Dismiss, relators asked the trial court to "dismiss or, in the alternative, to stay this action in favor of parallel litigation in Delaware based on a mandatory forum selection provision in MetroPCS' bylaws and in the interests of comity." Attached to relators' Motion to Dismiss was a document titled "Fourth Amended and Restated Bylaws of MetroPCS Communications, Inc.," which stated in part

[T]he Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, [or] (ii) any action asserting a claim of breach of a fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders . . . .

Additionally, on that same date, relators filed an "Opposition to Plaintiffs' Motion for

Temporary Restraining Order and Expedited Discovery," which included a "Motion to Stay" (the "Motion to Stay") requesting the trial court to rule on relators' Motion to Dismiss before considering Golovoy's motion for a temporary restraining order and expedited discovery. In opposition to the motion for a temporary restraining order, relators argued in part

> Plaintiff's Motion is not verified, and the only evidence filed by Plaintiff is the Affidavit of Plaintiff's counsel—which does nothing more than authenticate the Business Combination Agreement between MetroPCS, DT and T-Mobile. Plaintiff has not filed any evidence of the prerequisites for obtaining injunctive relief under the Texas Rules of Civil Procedure—(1) a probable right to relief, (2) probable injury, (3) imminent harm, (4) irreparable injury, and/or (5) an inadequate remedy at law.

Further, in their Motion to Stay, relators objected to the trial court "ruling on Plaintiff's Motion before first ruling on the MetroPCS Defendants' Motions."

A hearing on Golovoy's motion for a temporary restraining order and order compelling expedited discovery was held on November 14, 2012. Counsel for Golovoy argued in part that DT, T-Mobile, and the Board "colluded" to agree to the five "deal protection devices" described above, which "are standing in the way of other buyers from coming forward." Golovoy asked the trial court to "restrain operation of two of these provisions": (1) the "poison pill lockup" and (2) the "force the vote provision." Further, Golovoy requested an "accelerated preliminary injunction hearing" to determine whether relators "should be permanently restrained from enacting and keeping in place these deal protection devices." As to the forum selection provision in question, Golovoy contended in part that the provision was unenforceable because the Board had the power to "unilaterally" change the bylaws and thus there was no "mutual bargaining power" or "mutuality of obligation" respecting the provision. Additionally, counsel for Golovoy stated, "it's clear that this—if the [trial court] has any inclination to agree with their forum selection clause that's robbing [the trial court] of the ability to adjudicate the case, then there needs to be full briefing on it." Finally, Golovoy (1)

contended the rules of civil procedure do not require a verified complaint in order to obtain a temporary restraining order "unless you don't give notice" and (2) argued his complaint was verified and he had "submitted all the evidence that is necessary for the [trial court] to decide this issue today."

Counsel for relators asserted, *inter alia*, their arguments described above. Further, relators contended Golovoy had not met the verification requirements of Texas Rules of Civil Procedure 680 and 682 because "there's no verified or sworn evidence of any of the elements for a TRO or injunctive relief." *See* TEX. R. CIV. P. 680, 682.

On November 15, 2012, Golovoy filed a letter from Briscoe to the trial court "to clarify which provisions of the [Business Combination Agreement] result in the 'Poison Pill Lockup' discussed in plaintiffs' TRO papers." The letter stated "[t]here are two relevant provisions": (1) section 3.3(v), which "carves out the merger between Metro PCS and [DT/T-Mobile] from application of [MetroPCS's] Rights Agreement, or 'Poison Pill'"and (2) section 4.5(b)(iv), which "precludes the Metro PCS modifying the Poison Pill to carving other potential competing proposal from application of [MetroPCS's] Poison Pill." Further, the letter stated

> Plaintiff's TRO motion seeks to suspend operation of the Poison Pill in its entirety. Doing so would not require any amendment to the [Business Combination Agreement], it would just restrain the relevant parties, as described in the proposed TRO order, from issuing the "Rights" connection with the "Rights Agreement," and thus restrain the triggering of the Poison Pill.

On that same date, relators filed (1) a "post-argument submission" in opposition to Golovoy's motion and (2) objections to Golovoy's proposed order. Relators' objections included, in part, the following:

> 1. The proposed order does not contain a ruling on (i) Defendants' objections and Motion to Stay contained in the MetroPCS Defendants' Opposition to Plaintiffs' Motion for Temporary Restraining Order and Expedited Discovery (the "Opposition"). The MetroPCS Defendants object to the Court's failure and refusal

to rule on their objections and requests contained in the Opposition.

2. The proposed order is issued without a court determination that venue is proper or that Plaintiffs have standing.

3. The proposed order contains factual findings without any evidentiary support. The relief granted requires evidentiary support.

4. The proposed order seeks to enjoin the MetroPCS Defendants from taking action under the Rights Agreement, which is not in evidence. The Business Combination Agreement cannot serve as evidence of the Rights Agreement.

In response, Golovoy filed a letter from Briscoe to the trial court in which Briscoe stated in part, "There is no reason why the [trial court] cannot rule on the TRO now and address the stay/dismissal issues later."

In the TRO, the trial court stated, in part, as follows:

> The Court finds that harm is imminent to Plaintiffs and if the Court does not issue the Temporary Restraining Order, Plaintiffs will be irreparably injured because of the Individual Defendants' implementation and maintenance of [MetroPCS's] shareholder rights plan (the "Poison Pill") and the inclusion of the "force the vote" provision in §4.5(h) of the Business Combination Agreement as deal protection devices, in conjunction with other defensive measures, to eliminate potential acquirers from making a competitive and superior bid for [MetroPCS], or any other offer that would have been made absent the adoption and maintenance of the defensive measures.

Additionally, the TRO stated, "This Order shall not be effective unless and until Plaintiffs execute and file with the County Clerk a Bond in conformity with the law in the amount of **$500,000.00**." (emphasis original).[4]

This mandamus proceeding followed.

## II. RELATORS' REQUEST FOR MANDAMUS RELIEF

### A. Applicable Law

Mandamus will issue if the relator establishes a clear abuse of discretion for which there is

---

[4] The record does not show a bond has been filed.

no adequate remedy by appeal. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) (orig. proceeding); *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding); *In re Tex. Am. Express, Inc.*, 190 S.W.3d 720, 723 (Tex. App.—Dallas 2005, orig. proceeding); *see In re Jorden*, 249 S.W.3d 416, 424 (Tex. 2008) (orig. proceeding) ("[a] trial or appellate court has no discretion in determining what the law is or in applying the law to the facts, even if the law is somewhat unsettled."). In determining whether appeal is an adequate remedy, we consider whether the benefits outweigh the detriments of mandamus review. *In re BP Prods. N. Am., Inc.*, 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding); *see also In re Gulf Exploration*, 289 S.W.3d 836, 842 (Tex. 2009) (orig. proceeding) ("There is no definitive list of when an appeal will be 'adequate,' as it depends on a careful balance of the case-specific benefits and detriments of delaying or interrupting a particular proceeding.").

### B. Analysis

#### 1. Abuse of Discretion

In four issues, relators contend the trial court abused its discretion by (1) "granting [the TRO] and ordering a temporary injunction hearing despite a pending motion to dismiss based on a mandatory exclusive forum selection clause in [MetroPCS's] bylaws requiring that this case be heard only in the Delaware Court of Chancery"; (2) "refusing to rule on Relators' Motion to Stay the case until after a ruling on the Motion to Dismiss raising the issue of the mandatory exclusive forum selection provision"; (3) "granting a temporary restraining order without any verified facts, affidavits

or other evidence supporting the findings in the TRO Order or establishing a valid claim, probable right of recovery, or any imminent irreparable harm, in violation of TEX. R. CIV. P. 682"; and (4) "enjoining contractual provisions that are expressly permitted by controlling Delaware law." We consider these issues in turn.

a. Satisfaction of Requirements For Temporary Restraining Order

First, we address relators' third issue, in which they contend the TRO was granted in violation of Texas Rule of Civil Procedure 682. Golovoy responds "[t]he trial court correctly concluded that because Texas Rule of Civil Procedure 680 and not Rule 682 addresses temporary restraining orders, and because notice was given, no verified petition or evidence was necessary." Further, Golovoy asserts that "even if a verified petition and/or evidence were a necessary prerequisite for issuance of a TRO, both were present here." Specifically, Golovoy argues he submitted "a verification for his petition through his attorneys" and "also submitted evidence at the hearing, in the form of the Business Combination Agreement that set forth the relevant provision that Plaintiff was seeking to enjoin, the Poison Pill Lock-Up and the force the vote provision."

Section five of the Texas Rules of Civil Procedure is titled "Injunctions" and contains rules 680 through 693a. *See* TEX. R. CIV. P. 680–693a. Rule 682, titled "Sworn Petition," provides "[n]o writ of injunction shall be granted unless the applicant therefor shall present his petition to the judge verified by his affidavit and containing a plain and intelligible statement of the grounds for such relief." TEX. R. CIV. P. 682. "Verified by his affidavit" means "proved to be true or correct." *City of Arlington v. Dallas-Fort Worth Safety Coach Co.*, 270 S.W. 1094, 1095 (Tex. Civ. App.—Fort Worth 1925, no writ). "It has been held that the verification must be direct and in such positive terms as would sustain a charge of perjury or false swearing, if the verification should prove to be false, and the affidavit must show to have been made on the personal knowledge of the affiant as to

the truth of the allegations verified." *Id.* Rule 680, titled "Temporary Restraining Order," provides in part that "[n]o temporary restraining order shall be granted without notice to the adverse party unless it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon." TEX. R. CIV. P. 680.

According to Golovoy, (1) rule 682 "addresses writs of injunctions, not temporary restraining orders" and (2) rule 680 "provides that a TRO may issue without a verified petition or an evidentiary showing of irreparable harm as long as notice of the TRO is provided to the adverse party." However, while rule 680 provides specific requirements pertaining to granting a temporary restraining order without notice, that rule does not mention or specifically address situations in which notice respecting a temporary restraining order has been provided to an adverse party. TEX. R. CIV. P. 680. Further, "[a] temporary restraining order is basically a writ of injunction within the meaning of TEX. R. CIV. P. 682." *Williams v. Bagley*, 875 S.W.2d 808, 810 (Tex. App.—Beaumont 1994, no writ); *see Spakes v. Weber*, No. 10-08-00313-CV, 2010 WL 139955, at *3 (Tex. App.—Waco Jan. 13, 2010, pet. denied) (mem. op.) ("A temporary restraining order is one of three forms of injunctions which may be issued by a court."). Additionally, rule 687, which sets forth the requisites for a "writ of injunction," provides specific requirements in the event such "writ of injunction" is a "temporary restraining order." TEX. R. CIV. P. 687(e). Accordingly, we cannot agree with Golovoy that a temporary restraining order is not a "writ of injunction" subject to the requirements of rule 682.[5]

Further, on this record, we cannot conclude Golovoy met the requirements of rule 682. Even

---

[5] In support of his position, Golovoy cites *Town of Palm Valley v. Johnson*, 17 S.W.3d 281, 288 (Tex. App.—Corpus Christi 2000, pet. denied) for the proposition that "[a] verified petition for injunctive relief is not required . . . when a full evidentiary hearing on evidence independent of the petition has been [held]." However, the record supplied to us shows no such "full evidentiary hearing" was held in the case before us, and *Johnson* is therefore inapposite. *See id.*

assuming without deciding that his petition was properly verified, the petition did not address or mention the "poison pill lockup" or the "force the vote provision"—the two "deal protection devices" Golovoy sought to restrain via his motion for a temporary restraining order—nor did the petition request the injunctive relief that was the subject of his motion. Therefore, Golovoy's petition did not contain "a plain and intelligible statement of the grounds" for his requested temporary restraining order. *See* TEX. R. CIV. P. 682. In an affidavit pertaining to Golovoy's motion for a temporary restraining order and order compelling expedited discovery, Briscoe stated in part, "I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto." Additionally, Briscoe (1) stated that "a true and correct copy" of the Business Combination Agreement was attached and (2) declared "under penalty of perjury" that "the foregoing is true and correct." Briscoe's affidavit, at most, authenticated the Business Combination Agreement. *See Dallas-Fort Worth Safety Coach Co.*, 270 S.W. at 1095.

Golovoy asserts in his response in this Court that "[e]vidence of the Poison Pill Lockup—what Relators prefer to call the "Rights Agreement"—was in the record." Further, according to Golovoy, "[t]he trial court concluded that the collective effect of the provisions were operating to preclude competing bidders from emerging, and depriving shareholders of receiving a premium for their shares" and "[t]hat is sufficient under the law to support a conclusion of irreparable harm." In support of his position, Golovoy cites (1) argument by his counsel during the hearing on his motion and (2) a Delaware case, *Police & Fire Ret. Sys. v. Bernal*, No. 4663-CC, 2009 WL 1873144, at *2 (Del. Ch. June 26, 2009). Golovy does not explain, and the record does not show, how argument by his counsel at the hearing constitutes "evidence." Further, unlike the case before us, *Bernal* involved a motion to expedite proceedings pertaining to a request for injunctive relief. *Id.* at *1. The court in *Bernal* did not address the requirements for granting a temporary

-12-

restraining order. *See id.* Consequently, we do not find *Bernal* persuasive.

While the authenticated Business Combination Agreement attached to Briscoe's affidavit shows the terms of the proposed business combination, it does not show the effect of such terms or demonstrate that any other potential bidders have been deterred, as argued by Golovoy. Further, the Business Combination Agreement does not contain the MetroPCS "Rights Agreement, dated as of March 29, 2007," which Golovoy described in his motion as the "Poison Pill" and sought to suspend in its entirety. The record shows no verified facts or evidence other than the Business Combination Agreement to support the TRO. Therefore, we conclude the trial court abused its discretion by granting the TRO. *See* TEX. R. CIV. P. 682; *see also Operation Rescue-Nat'l. v. Planned Parenthood of Houston & Se. Tex.*, 975 S.W.2d 546, 560 (Tex. 1998) ("a trial court has no discretion to grant injunctive relief . . . without supporting evidence.").

We decide in favor of relators on their third issue. In light of our disposition of relators' third issue, we need not address relators' fourth issue.

### b. Priority as to Relators' Motion to Dismiss

Next, we consider together relators' first and second issues, in which they assert the trial court abused its discretion by (1) not staying Golovoy's motion for a temporary restraining order and order compelling expedited discovery until after deciding relators' Motion to Dismiss pursuant to the "mandatory exclusive forum selection provision" and (2) refusing to rule on relators' Motion to Stay.

Golovoy responds in part that "no abuse of discretion can be attributed to the trial court for deferring a ruling on an unsettled, non-jurisdictional legal issue that was not even before the trial court, to address the more immediate concerns of irreparable harm raised by Plaintiff's TRO, which was the only issue set for hearing that day."

–13–

The Texas Supreme Court has consistently granted petitions for writ of mandamus to enforce forum selection clauses because a trial court that improperly refuses to enforce such a clause has clearly abused its discretion. *In re ADM Investor Servs., Inc.*, 304 S.W.3d 371, 374 (Tex. 2010) (orig. proceeding) (citing *In re AIU Ins. Co.*, 148 S.W.3d 109, 114–15 (Tex. 2004) (orig. proceeding)); *see In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 (Tex. 2010) (orig. proceeding) ("A trial court abuses its discretion when it fails to properly interpret or apply a forum-selection clause.") (citing *In re Laibe Corp.*, 307 S.W.3d 314 (Tex. 2010) (orig. proceeding)); *accord In re AutoNation*, 228 S.W.3d 663, 667–70 (Tex. 2007) (orig. proceeding).

*In re AutoNation* involved a suit filed in Florida by relator AutoNation, Inc. against Garrick Hatfield to enforce a covenant not to compete. *See* 228 S.W.3d at 664. In the employment contract containing the covenant, AutoNation and Hatfield had agreed to litigate any disputes arising under the contract in Florida under Florida law. *Id.* Hatfield later sued AutoNation in Texas under the contract. *Id.* The Texas trial court declined to dismiss or stay the Texas action and enjoined AutoNation from pursuing its Florida lawsuit. *Id.* AutoNation filed a notice of accelerated appeal of the trial court's injunction order, and the following week it filed a petition for writ of mandamus in the court of appeals. *Id.* at 666. The court of appeals denied mandamus relief on grounds that an adequate remedy at law was available to AutoNation, namely its earlier-filed interlocutory appeal. *Id.* AutoNation filed a petition for writ of mandamus in the Texas Supreme Court, seeking relief from the anti-suit injunction and dismissal or abatement of the entire case pursuant to the mandatory forum selection clause. *Id.* The court of appeals proceeded to decide and issue an opinion in the interlocutory appeal of the injunction order, concluding "[b]ecause the Texas Supreme Court has held that fundamental Texas public policy requires application of Texas law to the question of enforceability of a non-compete agreement, we are unable to hold that the trial court abused its

discretion in issuing an injunction to halt the Florida proceeding and allow the Texas case to proceed to trial." *Id.* at 667.

The supreme court conditionally granted AutoNation's petition for writ of mandamus. *Id.* The supreme court observed that "'[s]ubjecting a party to trial in a forum other than that agreed upon and requiring an appeal to vindicate the rights granted in a forum-selection clause is clear harassment'—harassment that injures not just the non-breaching party but the broader judicial system, injecting inefficiency by enabling forum-shopping, wasting judicial resources, delaying adjudication on the merits, and skewing settlement dynamics contrary to the parties' contracted-for expectations." *Id.* at 667–68. Further, the supreme court stated that its decisions regarding the propriety of mandamus relief in forum-selection cases comport with the principle that parties generally have the freedom to negotiate agreements as they see fit. *Id.* at 668. The court concluded that under controlling precedents on forum-selection clauses, the parties' bargained-for agreement merits judicial respect, and the dispute should be heard in the Florida action as the parties contracted. *Id.* at 669 (citing *In re Automated Collection Tech., Inc.*, 156 S.W.3d 557 (Tex. 2004) (orig. proceeding); *In re AIU Ins. Co.*, 148 S.W.3d at 109).

In the case before us, relators' Motion to Dismiss and Motion to Stay were filed prior to the hearing on Golovoy's motion for a temporary restraining order and order compelling expedited discovery. Further, the forum selection provision in question was addressed by both Golovoy and relators during the hearing and in the parties' post-hearing filings, which included an objection by relators to the trial court's failure to rule on their objections and Motion to Stay. The record does not show the trial court ruled on the Motion to Dismiss or the Motion to Stay before signing the TRO. On this record, we conclude the trial court abused its discretion by granting injunctive relief without first ruling on relators' motions respecting the forum selection clause in question. *See id.*

at 668–70; *see also In re Boehme*, 256 S.W.3d 878, 880 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) (mandamus relief granted to overturn temporary injunction order and dismiss case based on forum selection clause).

We decide in favor of relators on their first and second issues.[6]

### 2. Adequate Remedy

Finally, we address relators' assertion that they lack an adequate remedy by appeal. Relators argue "[a]llowing the TRO Order to stand, and allowing the temporary injunction hearing to proceed as ordered, deprives Relators of the benefits of the forum selection clause, violates the requirement that injunctive relief be supported by proof, maintains a clear and prejudicial error of law, and interferes with a multi-billion dollar transaction and itself could cause irreparable harm to the many MetroPCS stockholders who have not complained and those who honored the Bylaws' provision for any litigation to occur in Delaware." Thus, relators contend, the benefits of mandamus review outweigh any detriments.

Golovoy argues "[t]here are no urgent circumstances present here justifying the extraordinary remedy of a writ of mandamus." Specifically, according to Golovoy, because he has not yet executed and filed a bond as required by the TRO, "the TRO Order is not ripe for judicial review by this Court." Additionally, Golovoy asserts "because it is unknown how the trial court will rule on defendants' Motion to Dismiss or Stay, Relators' application for mandamus is premature."

In support of his argument that the TRO is "not ripe," Golovoy cites to a "concurring statement" involving a criminal case. *See Lizcano v. Chatham*, No. WR-68,348-02, 2011 WL 4596044, at *1–2 (Tex. Crim. App. Oct. 5, 2011) (orig. proceeding). However, unlike the case

---

[6] To the extent relators' first issue is construed to raise the merits of the arguments asserted in their Motion to Dismiss respecting the validity of the forum selection provision in question, we conclude mandamus relief respecting that portion of relators' first issue is not available because the trial court has not yet had a hearing or ruled on the Motion to Dismiss. *See In re Sierra Club*, No. 08–12–00236–CV, 2012 WL 5942912, at *4 (Tex. App.—El Paso Nov. 28, 2012, orig. proceeding).

before us, *Lizcano* involved a discovery order the court concluded was "vague." *See id.* Because *Lizcano* is distinguishable on its facts, we do not find it persuasive. In the case before us, the record shows the trial court has signed the TRO. Golovoy cites no authority, and we have found none, supporting the position that, on these facts, the TRO is "not ripe." Further, while the record does not show a ruling on relators' Motion to Dismiss or Motion to Stay, the relief requested by relators in this Court pertains to obtaining a ruling on those motions before moving forward with other matters in the case. Thus, we cannot agree with Golovoy that the fact that it is unknown how the trial court will ultimately rule on relators' motions renders their petition for writ of mandamus "premature."

Generally, "an appellate remedy is inadequate when a trial court improperly refuses to enforce a forum-selection clause because allowing the trial to go forward will 'vitiate and render illusory the subject matter of an appeal'—i.e., trial in the proper forum." *In re Lisa Laser,* 310 S.W.3d at 883 (citing *In re AIU Ins. Co.,* 148 S.W.3d at 115); *see In re AutoNation,* 228 S.W.3d at 668 (failure to enforce contractual forum selection clause "constitutes a clear abuse of discretion for which there is no adequate remedy by appeal") (citing *In re Automated Collection Tech., Inc.,* 156 S.W.3d at 558). Further, the Texas Supreme Court has stated that because temporary restraining orders are not appealable, a party against whom a temporary restraining order has been granted has "no remedy by appeal." *In re Office of Attorney Gen.,* 257 S.W.3d 695, 697–98 (Tex. 2008) (orig. proceeding); *see Hamilton Guar. Capital, LLC v. Orphan House Prods., LLC,* No. 05-11-01401-CV, 2012 WL 2359881, at *1 (Tex. App.—Dallas June 21, 2012, no pet.) (mem. op.).

In the case before us, the record shows the trial court granted Golovoy's motion for a temporary restraining order and set a temporary injunction hearing without deciding relators' pending motions respecting enforcement of the forum selection provision in question. Accordingly, on this record, we conclude relators lack an adequate remedy by appeal. *See In re Lisa Laser,* 310

S.W.3d at 883; *In re Office of Attorney Gen.*, 257 S.W.3d at 697–98; *In re AutoNation*, 228 S.W.3d at 668; *In re Automated Collection Tech., Inc.*, 156 S.W.3d at 558; *In re AIU Ins. Co.*, 148 S.W.3d at 115; *cf. In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding) (mandamus relief proper where trial court "subjects taxpayers, defendants, and . . . the state's district courts to meaningless proceedings and trials" by "ma[king] no effort to follow" venue rule).

### III. CONCLUSION

We decide in favor of relators on their first, second, and third issues. We need not address relators' fourth issue.

Because we conclude relators have shown the trial court abused its discretion and they have no adequate remedy by appeal, we conditionally grant relators' petition for writ of mandamus. A writ will issue only in the event the trial court fails to (1) vacate the November 16, 2012 TRO, including the setting for the temporary injunction hearing on November 29, 2012; (2) deny Golovoy's motion for a temporary restraining order; and (3) grant relators' motion to stay the case until relators' Motion to Dismiss is decided.

DOUGLAS S. LANG
JUSTICE

121577F.P05